**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Brenda Lee WORKING, Defendant–Appellee.**

No. 01–30098.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 6, 2002.

Filed April 17, 2002.

---

**804**

Karin B. Hoppmann, Attorney, U.S. Department of Justice, Criminal Division Appellate Section, Washington, D.C., for the plaintiff-appellant.

Wayne C. Fricke, Attorney, Law Offices of Monte E. Hester, Inc., P.S., Tacoma, Washington, for the defendant-appellee.

Before ALARCON, SILVERMAN, Circuit Judges, and BREWSTER,* District Judge.

OPINION

SILVERMAN, Circuit Judge.

The government appeals the district court's sentencing of Brenda Working to one day for assault with intent to commit first degree murder in violation of 18 U.S.C. § 113(a)(1). Working also received a mandatory five-year sentence for use of a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c). The issue before the court is whether the extent of the district court's downward departure from the Guidelines on the assault charge was reasonable in light of the rationale given for the departure. We conclude that the district court abused its discretion in sentencing Working to one day for assault with intent to commit first degree murder. The district court improperly considered the mandatory consecutive sentence under 18 U.S.C. § 924(c), as well as Working's low risk of recidivism, when deciding how far to depart from the Guidelines. We vacate the sentence and remand for resentencing.

I.

On August 1, 1997, Brenda Working shot her husband, Michael Working, several times with a .38 caliber handgun. She pleaded guilty to assault with intent to commit first degree murder, in violation of 18 U.S.C. § 113(a)(1), and use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c).

* The Honorable Rudi M. Brewster, Senior United States District Judge for the Southern District of California, sitting by designation.

This is the second time that Working's sentence has come before this court. *See United States v. Working*, 224 F.3d 1093 (9th Cir.2000) (en banc) ("*Working I* "). The facts underlying Working's offense and conviction are set forth in detail in *Working I* and need not be repeated here. Instead, we focus only on the key events that have led to this appeal of Working's sentence.

The district court first sentenced Working on April 10, 1998. For the assault with intent to commit first degree murder charge, Working's adjusted offense level under the Sentencing Guidelines was calculated to be a level 29, and the sentencing range—for an individual, like Working, falling in Criminal History Category I—was 87 to 108 months. The district court, however, found that Working's behavior was aberrant and warranted a downward departure from the range in the Guidelines. The district court reduced Working's offense by 21 levels, to a level 8, bringing the sentencing range for the assault with intent to commit first degree murder from zero to six months. The district court then sentenced Working to one day for the assault with intent to commit first degree murder, and to the mandatory consecutive five-year 5851 sentence for the use of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c).

The government appealed that sentence, arguing that the downward departure for aberrant conduct was unjustified. In *Working I*, this court concluded that the district court did not abuse its discretion in finding that Working's behavior was aberrant. 224 F.3d at 1102. The court reasoned that pursuant to *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), the district court had substantial discretion in making a sentencing decision, and that the district court properly "based its finding on an evaluation of the defendant's mental state at the time of the incident, emotional and psychological pressures she was suffering under at the time, letters of support from family and friends, her lack of criminal history, and the singularity of the event." *Id.*

The *Working I* court held, however, that a district court must give reasons to justify the *extent* of a downward departure. *Id.* Accordingly, the en banc panel vacated the sentence and remanded the case to the district court for re-sentencing. The *Working I* court directed the district court to specifically explain the extent of any departure from the Sentencing Guidelines. *Id.*

On February 1, 2001, the district court again sentenced Working to one day for the assault with intent to commit first degree murder charge, in addition to the five year mandatory consecutive sentence pursuant to 18 U.S.C. § 924(c). At the re-sentencing hearing, the district court again decided to depart based on aberrant conduct, and identified the following factors for his decision: (1) the isolated nature of the act, (2) the shock expressed by Working's friends and family when they learned of the assault, (3) Working's lack of a prior criminal record, (4) the extreme pressure Working suffered as a result of her pending divorce, (5) the counseling Working had received since incarceration, and (6) the depression Working suffered as a result of the mental and psychological abuse that she was subjected to by her husband.[1]

---

1. Congress has amended the Guidelines so that a downward departure for aberrant behavior may not be given where the defendant was involved in a crime resulting in serious bodily injury, or where a firearm was used. 2000 U.S.S.G. § 5K2.20. That provision did not go into effect until November 1, 2000, after Working's first sentencing, and the gov-

The district court then gave the following explanation to justify the extent of the departure:

> [T]he court finds that it can consider, and does, the defendant's total exposure to incarceration as a basis for departure because the sentencing commission has not fully considered the interplay between section 924(c) and the guidelines in fashioning a sentence sufficient but not greater than necessary to achieve the statutory purposes of sentence. The statutory purposes of sentencing, the reform act, envisions more severe sentences for defendants considered more likely to commit further crimes and less severe sentences for those unlikely to commit additional crimes.
>
> Extensive imprisonment serves little purpose for this particular defendant in this case. Brenda's lack of criminal history, as evidenced by her criminal history category of I, and the aberrant nature of her conduct evidences an extreme low risk of recidivism. Brenda has shown remorse and contriteness for what she did. She is out of that situation that precipitated the crime, has undergone counseling, substantial counseling since incarceration. And her crime was only directed at a specific target; namely, her husband.
>
> In this court's opinion, there is no danger, from all the evidence that I have seen, that she would engage in the same type of behavior against either Michael Working or anyone else in the community.
>
> The sentence that I'm about to impose promotes respect for the law, provides punishment, reflects the seriousness of the offense, and affords adequate deterrence, both specific and general.

ernment concedes that U.S.S.G. § 5K2.20

The government now appeals, for the second time, Working's sentence of one day for the assault with intent to commit first degree murder. The government argues that the district court has failed to justify the extent of its departure from the Sentencing Guidelines.

## II.

 We have jurisdiction pursuant to 28 U.S.C. § 1291, and we review the extent of the district court's downward departure for an abuse of discretion. *See Koon*, 518 U.S. at 98, 116 S.Ct. 2035. "A district court's decision to depart from the Guidelines ... will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court." *Id.*

 "Every departure must be 'reasonable' in extent." *United States v. Ferra*, 900 F.2d 1057, 1061 (7th Cir.1990); 18 U.S.C. § 3742(e)(3). "[W]e review the extent of the departure for reasonableness 'in light of the structure, standards and policies of the Act and Guidelines.' " *United States v. Henderson*, 993 F.2d 187, 188–89 (9th Cir.1993) (citation omitted). The district court must "explain the reasoning for both the direction and degree of the departure in sufficiently specific language to allow appellate review." *Id.* at 189. This court, however, does not require a "mechanistic approach to determining whether the extent of a district court's departure was unreasonable." *United States v. Sablan*, 114 F.3d 913, 919 (9th Cir.1997) (en banc).

 The government argues that the district court failed to justify the extent of the departure, and that the district court relied on two prohibited factors: (1) the interplay between 18 U.S.C. § 924(c) and the Guidelines, and (2) Working's low risk

does not apply to Working.

of recidivism. Whether a factor is a permissible grounds for departure is a question of law, but "[l]ittle turns ... on whether we label review of this particular question abuse of discretion or *de novo*, for an abuse-of-discretion standard does not mean a mistake of law is beyond appellate correction." *Koon*, 518 U.S. at 100, 116 S.Ct. 2035. "The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Id.* We agree with the government that the district court was prohibited from considering those two factors. We also agree that the district court abused its discretion because the remaining reasons it gave do not justify the extent of the departure in light of the framework, structure, and policies of the Guidelines.

### A.

The government argues that the district court improperly considered the mandatory consecutive sentence under 18 U.S.C. § 924(c) in formulating the extent of the departure for the underlying assault offense. We agree with the government that under the Sentencing Guidelines, a mandatory consecutive sentence under 18 U.S.C. § 924(c) is an improper factor to consider in making a departure, or fashioning the extent of a departure.

 We begin with the proposition that except for some specific factors that a court is prohibited from considering in making a departure—such as race, sex, and national origin—the Sentencing Guidelines generally do not limit the kinds of factors "that could constitute grounds for departure in an unusual case." 1997 U.S.S.G. Ch. 1, Pt. A, 4(b); *see also* 1997 U.S.S.G. § 5H1.10; *Koon*, 518 U.S. at 93, 116 S.Ct. 2035. A district court may only make a downward departure if it finds that the Sentencing Commission did not adequately consider a mitigating circumstance in formulating the Guidelines. 18 U.S.C. § 3553(b). In determining whether a circumstance was adequately taken into consideration, the district court may "consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." 18 U.S.C. § 3553(b).

 We conclude that the Sentencing Guidelines take into account the impact of 18 U.S.C. § 924(c), and thus the mandatory consecutive sentence is not a basis for a downward departure. *See* 1997 U.S.S.G. § § 2K2.4 and 5G1.2(a); *United States v. Winters*, 174 F.3d 478, 483 (5th Cir.1999). Both the Guidelines and 18 U.S.C. § 924(c) require that the defendant be sentenced separately for use of a firearm and underlying offense. Specifically, the Guidelines require that a mandatory "consecutive sentence shall be *determined and imposed independently.*" 1997 U.S.S.G. § 5G1.2(a) (emphasis added). In addition, Section 2K2.4 of the Sentencing Guidelines specifically addresses 18 U.S.C. § 924(c), and requires that the defendant be sentenced to the term of imprisonment required by statute. 1997 U.S.S.G. § 2K2.4. At the time of the offense, 18 U.S.C. § 924(c) provided that "[w]hoever, during an in relation to a crime of violence.. uses or carries a firearm, shall, *in addition to the punishment provided for such crime of violence* ... be sentenced to imprisonment for five years." (emphasis added).

The Application Notes to the Sentencing Guidelines also indicate that the Sentencing Commission considered and took into account the interplay between the sentences for 18 U.S.C. § 924(c) and the underlying offense. The Guidelines prevent double-counting for the firearms charge by providing that the underlying offense-level will not include any enhancements for the applicable weapons enhancement. *See*

1997 U.S.S.G. § 2K2.4, App. Note 2; *Winters*, 174 F.3d at 483. Thus, it is clear to us that the Sentencing Commission fully considered the interplay between 18 U.S.C. § 924(c) and the Guidelines, and, as a result, the mandatory consecutive sentence was not a basis for departure from the Guidelines.

### B.

 The district court also abused its discretion by taking into account Working's low likelihood of recidivism. *See Koon*, 518 U.S. at 111, 116 S.Ct. 2035. The U.S. Supreme Court has explicitly banned a low likelihood of recidivism as a basis for departure from the Guidelines. *Id.* The Guidelines take into account a defendant's low likelihood of recidivism by creating a lower sentencing range under Criminal History Category I for a first-time offender. *Id.;* 1997 U.S.S.G. § 4A1.3. The district court is forbidden from departing based on a factor already taken into consideration in the Guidelines. *See Henderson*, 993 F.2d at 189.

### C.

As explained above, we agree with the government that the district court improperly took into account the interplay between 18 U.S.C. § 924(c) and the Guidelines, as well as Working's low risk of recidivism. We now examine whether the district court gave any other reasons that could justify the extent of the departure.

 Working argues that the district court properly considered the policy goals of the Sentencing Guidelines in determining the extent of the departure. While it was proper for the district court to consider the purposes of the Sentencing Guidelines under 18 U.S.C. § 3553, mere lip service to those goals do not justify the one-day sentence imposed for the assault with intent to commit first degree murder.

 Working also contends that the district court properly considered her post-sentencing rehabilitation in explaining the extent of his departure. We conclude that the district court's vague references to Working's "substantial counseling" in prison do not indicate that the district court found that Working demonstrated an extraordinary level of rehabilitation that would take her case outside the heartland of the Guidelines. 5857 *See United States v. Green*, 152 F.3d 1202 (9th Cir.1998). The district court gave no indication that Working's counseling constituted "highly successful" or "exceptional" rehabilitation. *Id.* Accordingly, there is no support for an independent departure based on post-sentencing rehabilitation.[2] Even if there were, the district court's general references to counseling do not support the extent of this departure.

 Our review of the record did not turn up any other reasons that, independently or taken as a whole, would explain the one-day sentence for the assault with intent to commit first degree murder. The district court at the re-sentencing reiterated its view that Working deserved a downward departure because at the time of the offense, she suffered from depression as a result of abuse from her husband and that she was under extreme pressure regarding the pending divorce. The dis-

---

**2.** U.S.S.G. § 5K2.19 expressly prohibits a downward departure based on post-sentencing rehabilitation. This provision went into effect on November 1, 2000, after Working's first sentencing, but before the re-sentencing. Because we conclude that the district court's findings were not sufficient to invoke—or to justify—a post-sentencing rehabilitation departure, we need not reach the issue of whether, as a matter of law, the district court would violate U.S.S.G. § 5K2.19 by departing based on post-sentencing rehabilitation.

trict court also relied on letters of support from Working's family and friends, and the fact that the shooting was an isolated incident. All of those factors made a downward departure discretionary, but do not describe a situation that is so far outside the heartland of the Guidelines as to explain a one-day sentence on the assault with intent to commit first degree murder.

A district court, when departing, is charged with creating a sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a). The district court has failed to explain how a one-day sentence for assault with intent to commit first degree murder comports with the goals of the Guidelines. We realize that the overall sentence was five years and one day, but, as stated above, the district court is prohibited from making a downward departure based on the mandatory consecutive sentence under 18 U.S.C. § 924(c).

■ The government urges us to adopt a rule that the district court abused its discretion by departing by more than five years, or 60 months, from the Guidelines, because such a departure in effect "erases" the mandatory consecutive five-year sentence under 18 U.S.C. § 924(c). Under the government's view, the district court abused its discretion, as a matter of law, by sentencing Working to less than 27 months for the assault charge. We decline the invitation to set forth a set of rules or mathematical formulas that would define the limits of a district court's broad discretion to determine the extent of a departure. "Almost by definition, there cannot be rules for computing the amount of departure—for if it were possible to do this, the factors could be included in the Guidelines, avoiding 'departures' altogether." *Ferra,* 900 F.2d at 1061.

■ Instead, we simply hold that the district court abused its discretion by failing to justify a departure of this magnitude for a crime of this magnitude. "When a reviewing court concludes that a district court based a departure on both valid and invalid factors, a remand is required unless it determines the district court would have imposed the same sentence absent reliance on the invalid factors." *Koon,* 518 U.S. at 113, 116 S.Ct. 2035. The district court's reasoning was insufficient to justify a departure that resulted in no sentence at all for a serious crime of violence. Accordingly, we vacate the sentence.

### III.

■ We exercise our supervisory powers under 28 U.S.C. § 2106 and reassign this case to a different district court judge for re-sentencing. Absent allegations of bias, the factors this court considers in deciding whether "unusual circumstances" exist and remand to a different judge is appropriate are: (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. *See Smith v. Mulvaney,* 827 F.2d 558, 562–63 (9th Cir. 1987). The first two factors are of equal importance, and a finding of "either one would support remand to a different judge." *State of California v. Montrose Chemical Corp. of California,* 104 F.3d 1507, 1521 (9th Cir.1997).

■ After a review of the record, we conclude that the district court would have

substantial difficulty disregarding the view that a one-day sentence was sufficient for the assault with intent to commit first degree murder in this case. The district court has twice sentenced Working to one day for the assault with intent to commit first degree murder. We do not doubt that the district court judge did what he thought was right. However, statements made by the district court at the resentencing hearing have heightened our concern that the district court is unlikely to disregard improper factors when fashioning a sentence for Working. The district court did not accept the fact that Michael Working is the victim in this case.[3] Moreover, the record indicates that the district court would be unlikely to set aside considerations of Working's sex, a clearly prohibited factor under the Guidelines, when re-sentencing.[4] For those reasons, we direct that the case be re-assigned to a different judge for re-sentencing.

**3.** The Court: Who are the victims in this case?

 Mr. Storm [Arlen R. Storm, Assistant United States Attorney]:
 Michael Working is very definitely the victim in this case, Your Honor.
 The Court: How about his two sons and their two daughters and the community?
 Mr. Storm: Your Honor, no, they are not the victims in this case.
 The Court: They are not?
 Mr. Storm: Michael Working is the victim in this case.
 The Court: Who suffers from what two consenting adults, apparently couldn't get along, and ended up, unfortunately, in violence?

**4.** The Court: You don't believe, other than physical violence, to protect one's self? There's no such situation as mental violence that one could believe they are protecting themselves?

 * * *

 The Court: Are you saying that because you're a male? It's very obvious in this case that most of the people that

SENTENCE VACATED, REMAND-ED FOR RE–ASSIGNMENT AND RE SENTENCING.

have to do with it, are looking at it, are males. Do you think it might—a male might take a different view of these facts than, say, a female?
 Mr. Storm: No, Your Honor. * * * I think that as males we want to see the worthy case. We want to see the woman as the—
 The Court: Well, males have always been the dominant persons in the United States. The Constitution was formed by all males, all white males. Wasn't it?
 Mr. Storm: And because—
 The Court: Women weren't even mentioned. All the laws were promulgated by white males. Women had nothing to do with those.
 Mr. Storm: Your Honor—
 The Court: Do you think it's unfair of the court to think about that?
 Mr. Storm: * * * Because of those very factors the court has mentioned, Your Honor, I think that we as males look for the worthy case. We seek out the worthy case. We want to find that the woman needs protection, and it just is not the fact in this case. . . .